UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN PRODUCTS PRODUCTION
COMPANY OF PINELLAS COUNTY, INC., et al.,

    Plaintiffs,

v.                                            Case No: 8:23-cv-747-KKM-SPF

DENISE ARMSTRONG, et al.,

    Defendants.
_____

## ORDER

On February 24, 2023, Plaintiffs American Products Production Company of Pinellas County and nine other Hillsborough County-based corporations filed a complaint in state court against Denise Armstrong and several parties associated with a multiemployer pension fund alleging defamation and abuse of process based on an ongoing lawsuit in the District of Maryland arising under the Employment Retirement Income Security Act of 1974 (ERISA). *See* Compl. (Doc. 1-1). On April 5, 2023, Defendants removed the case contending that federal question jurisdiction exists. *See* Notice of Removal (Doc. 1). Defendants now move to dismiss Plaintiffs' complaint for failure to state a claim and complete preemption under ERISA. *See* MTD (Doc. 18); MTD (Doc. 19). Plaintiffs move to remand, *see* Mot. for Remand (Doc. 12), and Defendants respond in opposition,

*see* Joint Resp. in Opp'n (Doc. 28). Because the Court lacks subject-matter jurisdiction over Plaintiffs' claims, the Court remands the case.

I.  BACKGROUND

Plaintiffs are a group of Florida corporations owned by Joseph Muraco and Kevin Mullan that made contributions to the pension plan administered by Defendant International Painters & Allied Trades Industry Pension Fund. Mot. for Remand at 3. Muraco and Mullan also owned Florida Glass, a company that made contributions to the pension fund. *Id.* Plaintiffs allege that Armstrong, a former employee of Plaintiffs, retaliated against Muraco and Mullan by submitting false accusations to the FBI and Florida Glass's bank, resulting in an FBI raid and seizure of Florida Glass's assets. *Id.*; Compl. ¶¶ 18, 20. Plaintiffs allege that this retaliation caused Florida Glass to file for bankruptcy, go out of business, and withdraw from the pension fund. Mot. for Remand at 3. The pension fund sought payment from Florida Glass based on the company's withdrawal liability, but Plaintiffs allege that Florida Glass could not pay. *Id.* at 3–4.

The pension fund then filed suit under ERISA and the Multiemployer Pension Plan Amendments Act in the District Court of Maryland seeking payment from Plaintiff corporations for Florida Glass's withdrawal liability. *Id.* at 4. Plaintiffs allege this action was an improper attempt to "harass and intimidate the Plaintiffs." *Id.* at 5. As a result, Plaintiffs filed their complaint in Florida state court for defamation and abuse of process.

2

*Id.* On April 5, 2023, Defendants removed the case. *See* Notice of Removal. Plaintiffs move to remand because this Court lacks subject-matter jurisdiction. *See* Mot. for Remand. Defendants respond that ERISA completely preempts Plaintiffs' claims. *See* Joint Resp. in Opp'n (Doc. 28).

## II.   LEGAL STANDARD

The removing party bears the burden of establishing subject-matter jurisdiction. *See Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021). Federal courts must also independently assure themselves that they have jurisdiction over a case at every stage, regardless of whether the parties raise the issue or agree that jurisdiction exists. *See Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008); *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020). As such, after removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (explaining that under the "longstanding interpretation of the current statutory scheme, the question of whether a claim 'arises under' federal law must be

3

determined by reference to the 'well-pleaded complaint' "). The well-pleaded complaint rule means that a federal question is "presented" when the complaint—on its face—invokes federal law as the basis for relief. "Th[is] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392. The Supreme Court long ago declared that, "[b]y unimpeachable authority," a lawsuit "brought upon a state statute does not arise under an act of Congress or the Constitution of the United States." *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 116 (1936).

So too, "[a] defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow*, 478 U.S. at 808. Indeed, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. This type of defensive preemption, sometimes called "ordinary preemption," is subject to the well-pleaded complaint rule. *See Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352–53 (11th Cir. 2003). Ordinary preemption provides an affirmative defense to state-law claims but will not provide a basis for removal to federal court. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343–44 (11th Cir. 2009).

4

"One corollary of the well-pleaded complaint rule," however, is the doctrine of complete preemption. *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). Distinct from defensive (or ordinary) preemption—which is an affirmative defense that may be invoked in both state and federal court—complete preemption is a "narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Geddes*, 321 F.3d at 1352–53 ("The federal preemptive power may be complete, providing a basis for jurisdiction in the federal courts, or it may be what has been called 'ordinary preemption,' providing a substantive defense to a state law action on the basis of federal law."); *see also Conn. State Dental*, 591 F.3d at 1343–44 (explaining that "[c]omplete preemption, also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule" and "differs from defensive preemption because it is jurisdictional in nature rather than an affirmative defense").

ERISA is one such statute that can implicate preemption. Both types of preemption may arise under ERISA, but only complete preemption provides a basis for removal. *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1014 (11th Cir. 2003).

Complete preemption "is jurisdictional" and "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Conn. State Dental*, 591 F.3d at 1344; *Taylor*, 481 U.S. at 65–66. This kind of preemption arises from ERISA's civil enforcement provision in § 502(a), which provides

5

"a comprehensive civil enforcement scheme," which demonstrates "that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal quotations omitted). "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.*

*Aetna Health, Inc. v. Davila* set forth a two-part test for determining whether complete preemption applies in the ERISA context. *See id.* at 210. "The *Davila* test thus requires two inquiries: (1) whether the plaintiff could have brought its claim under § 502(a); and (2) whether no other legal duty supports the plaintiff's claim." *Conn. State Dental*, 591 F.3d at 1345. If any part of the *Davila* test is not met, the Court lacks subject-matter jurisdiction and must remand the case. *See id.* at 1344–45.

## III.  ANALYSIS

Defendants allege that they removed this action based on federal question jurisdiction. *See* Notice of Removal at 10. Because Plaintiffs pleaded only breaches of Florida law and the parties are not completely diverse (Defendant Armstrong is a citizen of Florida as are Plaintiffs), Defendants argue that Plaintiffs' abuse of process claim is completely preempted by ERISA, thereby allowing removal under the well-pleaded complaint rule. *See Conn. State Dental*, 591 F.3d at 1343; Compl. ¶ 12; Notice of

6

Removal at 12. Defendants concede that "Plaintiffs' defamation claim against Armstrong does not arise under the laws of the United States," and the Defendants ask the Court to sever Plaintiffs' defamation claim and remand it to state court. *Id.* at 12–13. The Court agrees with Defendants and finds the reasoning of other district courts persuasive that a defamation claim arises from an independent legal duty separate from ERISA. *See, e.g., Long v. Boston Scientific Corp.*, 665 F.Supp.2d 541, 554 (D.S.C. Sept. 15, 2008) (holding that defamation claim is "completely different in kind from any claim which would be available to Plaintiff under ERISA"); *Hahn v. Rauch*, 602 F.Supp.2d 895, 908-09 (N.D. Ohio Aug. 15, 2008) (holding that defamation claim was not completely preempted by ERISA because it did not "seek to enforce the terms of an employee benefit plan and [was] not equivalent to an ERISA enforcement action"). That leaves only Plaintiffs' abuse of process claim to be analyzed under the *Davila* factors. Because Defendants fail to show that ERISA completely preempts that claim, the Court lacks subject-matter jurisdiction and remands the entire case.

Defendants argue that the abuse of process claim is completely preempted because it "pleads claims that challenge the merits of the Pension Fund's assessment of withdrawal liability" and "complete preemption applies to withdrawal liability claims." Joint Resp. in Opp'n at 2. Plaintiffs argue that their abuse of process claim is not completely preempted

7

by ERISA because Plaintiffs could not have brought their claim under § 502 of ERISA and an independent legal duty under state law supports its claim. Mot. for Remand at 8.

The first *Davila* inquiry asks whether a plaintiff "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210. This prong is met if (1) a plaintiff's claim falls within the scope of ERISA and (2) the plaintiff has standing to sue under ERISA. *Conn. State Dental*, 591 F.3d at 1350. To fall within the scope of ERISA, the liability of the claim must "derive[] entirely from the particular rights and obligations established by the benefit plan[]." *Davila*, 542 U.S. at 213. If a plaintiff's claim is instead, "entirely independent of the federally regulated contract," or "do[es] not attempt to remedy any violation of a legal duty independent of ERISA," it is not completely preempted. *Id.* at 213–14.

Plaintiffs allege that they do not qualify under either part of this prong because they do not seek relief available to them under ERISA, and "are not participants, beneficiaries . . . or a fiduciary" under an ERISA plan. Mot. for Remand at 11. Plaintiffs also allege that their abuse of process claim does not fall within the scope of ERISA because it does not "duplicate, supplement, or supplant the ERISA civil enforcement remedy," and "Plaintiffs complain only about the Removing Defendants' conduct," rather than the terms of the multiemployer plan at issue in the Maryland ERISA suit. *Id.* at 13 (emphasis removed).

8

Defendants argue that the Plaintiffs' abuse of process claim in this case "relate[s] to the substantive merits of the withdrawal liability claim, or the validity" of the Defendants' actions in the Maryland suit, and contains significant overlap with Plaintiffs' counterclaims in the Maryland suit. Joint Resp. in Opp'n at 4. In the Maryland suit, Plaintiffs filed counterclaims against Defendants for declaratory and injunctive relief that they are not required to make withdrawal liability payments to the pension fund. *Int'l Painters & Allied Trades Indus. Pension Fund v. Florida Glass of Tampa Bay, Inc.*, No. 1:23-cv-45-SAG, (D. Md. Jan. 9, 2023), Answer & Counterclaims (Doc. 6) ¶¶ 46–73. Defendants also argue that even though the Maryland suit is brought under the Multiemployer Pension Plan Amendments to ERISA rather than § 502, this action is completely preempted because it provides an alternative remedy to those provided by an ERISA civil enforcement mechanism. *Id.* at 14–18.

But Plaintiffs' claim does not fall within the scope of § 502 of ERISA. Abuse of process under Florida law requires Plaintiffs to prove that Defendants used the civil legal process against them primarily to accomplish a purpose for which it was not designed. *See In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017). For abuse of process, Florida law requires a plaintiff to prove that (1) the defendant made an illegal, improper, or perverted use of process; (2) the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) as a result,

9

the plaintiff suffered damage. *S&I Investments v. Payless Flea Market, Inc.*, 36 So.3d 909, 917 (Fla. 4th DCA 2010). Thus, that Florida-law tort arises from a legal duty "independent of" ERISA, and it does not create an "alternative remedy" to an ERISA civil enforcement mechanism. *See Davila*, 542 U.S. at 213–14. The ERISA case proceeding in federal court in Maryland hinges on enforcement of the Multiemployer Pension Plan Amendments to ERISA, which permit pension plans to recover withdrawal fees from employers that withdraw prematurely. *See Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 196 (1997). That the abuse of process claim relates to an ongoing federal claim does not give the Court jurisdiction because abuse of process is fundamentally different from a claim under ERISA. *See Gunn v. Minton*, 568 U.S. 251 (2005) (holding that the federal courts lacked jurisdiction over a legal malpractice claim arising from a patent case). Plaintiffs' abuse of process claim does not contest withdrawal liability, but rather the propriety of Defendants' actions under Florida law. Because Plaintiffs' abuse of process claim does not fall within the scope of ERISA, the Court need not address the additional *Davila* factors.

Defendants argue that, in the alternative, the Court has jurisdiction over this claim under *Gunn v. Minton*, 568 U.S. 251 (2005), and *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Defendants contend that this case is in a " 'special and small category' of state law claims [that] may be removed to federal

10

court under federal question jurisdiction" because "the federal issues [are] so significant in the state law action that the case essentially constitute[s] one 'arising under'" the laws of the United States. Joint Resp. in Opp'n at 18 (quoting *Gunn*, 568 U.S. at 258). Defendants argue that the federal issue in this case is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Id.* at 18 (reciting the *Grable* factors). Defendants emphasize that Congress intended ERISA issues to be "exclusively a federal concern," and a state court should not interpret ERISA provisions. *Id.* at 19. Finally, Defendants argue that Florida has "no interest whatsoever in having these withdrawal liability issues actually litigated in a tort case." *Id.* at 20.

This argument is unavailing. In *Gunn*, the Supreme Court concluded that the plaintiff's legal malpractice claim did not give rise to federal question jurisdiction. Although the malpractice claim "necessarily raise[d] disputed questions of patent law," it was "by [its] nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction." *Gunn*, 568 U.S. at 258–59. The Court emphasized that "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. The government has a strong interest when it acts to "vindicate its own administrative action" in, for example, a tax dispute, or determine "the constitutional validity of an act of Congress." *Id.* at 261 (quotation omitted). But a legal malpractice claim

11

concerning a patent case did not rise to such a level of significance because "[n]o matter how the state courts resolved" the malpractice claim, it would not "change the real-world result of the prior federal patent litigation." *Id.*

Same here. Even if the state court must address some aspects of the ERISA dispute, the state court's decision "will not stand as binding precedent" for any current or future withdrawal liability claim because resolution of Defendants' pending ERISA suit is not an essential element of Plaintiffs' abuse of process claim. *Id.* at 264; *see Grable*, 545 U.S. at 315. To succeed on their abuse of process claim, Plaintiffs must prove that process "was used for an immediate purpose other than that for which it was designed" rather than "the result for which it was intended." *See S&I Invs.*, 36 So.3d at 917. By contrast, the Defendants' complaint in the Maryland suit alleges violations of 29 U.S.C. § 1399, the Multiemployer Pension Plan Amendments to ERISA. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Florida Glass of Tampa Bay, Inc.*, No. 1:23-cv-45-SAG, (D. Md. Jan. 9, 2023); Compl. (Doc. 1) at 6–7. Resolving the Maryland suit will require the district court to determine whether Plaintiffs improperly withdrew from the pension fund. *See id.* at 6–9. This inquiry is distinct from an abuse of process analysis, which will evaluate the Defendants' motive for bringing the Maryland suit, not the merits of the Defendants' claim. Thus, no state court will adjudicate the merits of any ERISA claim, so this dispute is not significant enough to warrant federal jurisdiction.

12

Moreover, Florida has a strong interest in resolving a tort dispute between ten Florida-based companies (Plaintiffs) and a Florida citizen (Armstrong). *See Piper Aircraft v. Reyno*, 454 U.S. 235, 260 (1981) ("[T]here is a local interest in having localized controversies decided at home.") (internal quotation omitted); *Kinney Sys., Inc. v. Continental Ins. Co.*, 674 So. 2d 86, 90 (Fla. 1996) ("Florida's judicial interests are at their zenith . . . when the issues involve matters with a strong nexus to Florida's interests."). It is Defendants' burden to prove that the Court has jurisdiction, and they have not done so here. Defendants have failed to show that Plaintiffs' abuse of process claim presents an issue "so significant" as to transform it into a claim arising under federal law.

## IV. CONCLUSION

Because Defendants have failed to carry their burden to prove complete preemption, this Court lacks subject-matter jurisdiction.

Accordingly, the following is **ORDERED:**

1. Plaintiffs' Motion for Remand (Doc. 12) is **GRANTED**.

2. Defendants' Motions to Dismiss (Doc. 18, Doc. 19) are **DENIED without prejudice as moot**.

3. The Clerk is directed to **REMAND** this action to the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, and to transmit a certified copy of this order to the clerk of that court; to

13

**TERMINATE** any pending motions and deadlines; and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on May 30, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge